UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JERALD J. HICKOX,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____

Case No. 1:09-cv-343

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

        This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On October 18, 2004, plaintiff filed his application for DIB benefits alleging an October 12, 2004 onset of disability. (A.R. 90-92). His claim was denied on initial review. (A.R. 42-46). He received a hearing before an administrative law judge (ALJ) on May 17, 2006 (A.R. 344-405), at which he was represented by counsel. On June 26, 2006, the ALJ rendered a decision finding that plaintiff was not disabled. (A.R. 29-35). On November 18, 2006, the Appeals Council entered an order vacating the ALJ's decision and remanding the matter for further administrative proceedings. (A.R. 40-41). On July 3, 2007, plaintiff received a second administrative hearing (A.R. 406-39), at which he was represented by counsel. On September 28, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 13-25). On February 13, 2009, the Appeals Council denied review (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision.

On April 9, 2009, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claim for DIB benefits. He raises the following issue:

> The Decision wrongly rejects the opinions of the treating mental health providers and instead wrongly relies on the opinion of a non-treating source.

(Statement of Issue, Plf. Brief at 2, docket #10). Upon review, I find that plaintiff's argument does not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within

which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of October 12, 2004, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after October 12, 2004.[1] (A.R. 15). The ALJ found that plaintiff had the following severe impairments: "cardiomyopathy, status-post pacemaker implantation, and a depressive disorder." (A.R. 16). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 16). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

---

[1]The ALJ found that plaintiff performed work after his alleged onset of disability, but it did not rise to the level of substantial gainful activity. (A.R. 15-16).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform unskilled work that involves lifting and/or carrying up to ten pounds frequently and up to twenty pounds occasionally, standing and/or walking for up to two hours total, and sitting for a total of six hours in an eight-hour workday, and occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.

(A.R. 32). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could be reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> The claimant's cardiac problems resulted in a reduced ejection fraction and an irregular heartbeat. He underwent implantation of a pacemaker which stabilized his heart condition, although he had a lot of pain immediately after that procedure (Exhibit 8F, pp. 2, 3)[A.R. 251-52]. Dr. Burrill noted in February 2007, the claimant reported having a heart attack in 2004 that made it impossible for him to go back to work (Exhibit 13F, p.4 )[A.R. 287]. However, the claimant's record shows no evidence of him ever having a heart attack. Dr. Singh reported on July 26, 2006 that the claimant had an ejection fraction of 40% after an echocardiogram. The doctor diagnosed the claimant on that date with moderately impaired left ventricular systolic function, with no significant valvular heart disease, and only mildly dilated left atrium and left ventricle (Exhibit 11F, pp. 1-3)[A.R. 276-78]. When he was seen by the doctor in December 2006, the claimant was smoking more than before. He had an improved ejection fraction, which was normal at 50% as shown by the Adenosine stress test, which was negative for ischemia (Exhibit 14F, pp. 3-4)[A.R. 293-94]. An echocardiogram done on January 31, 2007 showed that the claimant had a normal ejection fraction of 55%, although he complained of regular chest pain. The doctor explained to the claimant on that date that his chest pain was non-cardiac in origin. As noted above, the doctor added Calan SR to his medication regimen (Exhibit 14F, pp. 1-2)[A.R. 291-92].
>
> It is clear from the records of the claimant's cardiologist, Dr. Singh, that the claimant has ongoing episodes of tachycardia and chest pain that is non-cardiac in origin. He has also had improvement in his ejection fraction so that it is now normal. When Dr. Garza examined the claimant on January 3, 2007, he had a regular heart exam with the exception of a murmur. [A.R. 302-04]. The claimant also had no joint pain, joint swelling, muscle pain, limitation of motion, muscular weakness, muscle cramps, back pain, or myalgias. The claimant's cardiac condition is generally stable with the medication that he now takes, and the implanted pacemaker, and his condition is not work-preclusive.

When the claimant responded to a questionnaire regarding his daily activities on June 5, 2007, the claimant indicated that he got along well with people if he knew them, and that he had friends. While the claimant complained of tiring easily, the claimant also cleaned house once a week, did yard work, including cutting the grass, once a week, shopped once a month, read daily, and was able to care for his personal needs, bathed every other day, played cards once a month, and attended sporting events once a month (Exhibit 18E)[A.R. 199-204].

The claimant's emotional problems have required no psychiatric hospitalizations in the past, and the claimant has had no suicide attempts. He did not start using psychotropic medications until 2006, and those medications provided good relief from his conditions and have provided emotional stability. He continues to see a counselor no more than once a month. His emotional deficits result in his being limited to doing unskilled work. However, those conditions, alone, or when considered in combination with his cardiac problems, are not disabling. While Dr. Garza, the claimant's primary care doctor, has consistently found no mental problems with the claimant other than ADHD (Exhibits 8F, p. 18; 15F, p.4)[A.R. 267, 304], Dr. Garza is not a mental health professional or specialist. Dr. Garza found that from a physical standpoint, the claimant was able to do a significant range of light work. That assessment is consistent with the claimant's longitudinal records and has been given significant weight.

Dr. Madrid reported on October 1, 2005 the claimant had a GAF score of 49, had ADHD, and a depressive disorder. While he had conducted no formal testing with the claimant, the doctor did not report psychological symptoms that would support a finding of disability here (Exhibit 9F)[A.R. 272-73].

With regard to both his emotional and physical problems, none of the claimant's treating doctors has recommended that the claimant have any sort of invasive treatment for his physical problems, or hospitalization or intensive psychotherapy for his emotional problems.

On February 14, 2005, a State agency physician assessed the claimant as being able to do a reduced range of light work (Exhibit 5F)[A.R. 230-38]. That assessment is entirely consistent with the claimant's longitudinal record, and has been given significant weight in determining the claimant's residual functional capacity.

Also given great weight are the opinions of Dr. Burrill, who evaluated plaintiff from a psychological standpoint. She was of the opinion that the claimant was limited to doing unskilled work, and the undersigned agrees that the claimant's record supports that conclusion, and therefore finds that the claimant is limited to doing a restricted range of light, unskilled work. [A.R. 284-90].

[] Mr. Handlin wrote a letter on July 3, 2007 supporting the claimant's application for Disability Insurance Benefits, and stating that the clamant was seen by him for psychiatric monitoring and medication management. However, it is important to note that Mr. Handlin

is not a psychiatrist or psychologist, but rather a physician's assistant. Accordingly, his ability to provide psychiatric counseling or treatment is limited, and he certainly cannot provide medication for the claimant. Mr. Handlin also does not specifically indicate in that letter that he finds the claimant to be disabled on a mental or emotional basis, and his prior notes do not support that conclusion. For all those reasons, the recommendation of Mr. Handlin for disability benefits is given greatly reduced weight.

(A.R. 21-23). Plaintiff was unable to perform his past relevant work. He was 39-years-old on the date of his alleged onset of disability and 42-years-old as of the date of the ALJ's decision. Thus, at all times relevant to his claim for DIB benefits, plaintiff was classified as a younger individual. (A.R. 23). Plaintiff has a high-school education and is able to communicate in English. (A.R. 23). The transferability of jobs skills was not material to a disability determination. (A.R. 23). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 31,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 434-35). The ALJ found that this constituted a significant number of jobs.[2] Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 13-25).

Plaintiff argues that the ALJ should have found that his attention deficit hyperactivity disorder (ADHD) was a severe impairment, should have given greater weight to a GAF score, and should have given greater weight to the opinions supplied by a social worker and a physician's assistant. (Plf. Brief at 12-17; Reply Brief at 2-7, docket # 15). For the reasons set forth below, I conclude that none of these arguments provides a basis for disturbing the Commissioner's decision.

---

[2] The ALJ's opinion only listed 26,000 of the 31,000 jobs identified by the VE. The 5000 job difference is attributable to the ALJ's understatement of the assembler jobs listed by the VE. (A.R. 24, 434). This error worked to plaintiff's advantage. It does not undermine the Commissioner's decision denying plaintiff's claim for DIB benefits.

1. Failure to Label ADHD as a Severe Impairment

The ALJ's failure to list ADHD as one of plaintiff's severe impairments is legally irrelevant. The ALJ found at step 2 of the sequential analysis that plaintiff had the following severe impairments: "cardiomyopathy, status-post pacemaker implantation, and a depressive disorder." (A.R. 16). The finding of a severe impairment is a threshold finding, requiring the ALJ to continue the sequential analysis. The finding of at least one severe impairment is sufficient to trigger further analysis. The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2008); *see Nejat v. Commissioner*, 359 F. App'x 574, 576-77 (6th Cir. 2009); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

2. GAF Score

Plaintiff argues that the ALJ rejected Dr. Raul Madrid's opinions "without proper basis" and should have given greater weight to plaintiff's GAF score of 49. These arguments cannot withstand scrutiny. The only evidence from Dr. Madrid is an October 1, 2005 report, based upon a September 28, 2005 examination. (A.R. 272-73). The report is not supported by test results. (A.R. 273). Dr. Madrid represented that he had seen plaintiff "off and on" for three years, with the initial counseling session on April 9, 2005. (A.R. 272). Plaintiff did not submit any of the underlying counseling records in support of his claim for DIB benefits. Plaintiff related a history of substance abuse, but asserted that he had not abused drugs since he started counseling[3] (A.R. 272).

---

[3]Plaintiff testified that he had seen Dr. Madrid for substance abuse counseling. (A.R. 420, 424). Plaintiff's medical records establish his abuse of cocaine, OxyContin, tobacco and alcohol. (*See e.g.*, A.R. 208, 212, 228, 246, 262, 274, 333-34). Since 1996, the Social Security Act, as

Dr. Madrid offered a diagnosis of ADHD and major depression and he gave plaintiff a current GAF score of 49. (A.R. 273). Dr. Madrid never prescribed medication. (A.R. 420). The ALJ found that the conclusions Dr. Madrid offered in his report were entitled to little weight: "Dr. Madrid reported on October 1, 2005 that the claimant had a GAF score of 49, had ADHD, and had a depressive disorder. While he had conducted no formal testing with the claimant, the doctor did not report psychological symptoms that would support a finding of disability here (Exhibit 9F)[A.R. 272-73]." (A.R. 22). The ALJ was not required to credit the doctor's bare opinion.

The ALJ was not required to give any weight to the low GAF score supplied by Dr. Madrid. *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment:

> [GAF score is] a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms ... or any serious impairment in social, occupational, or school functioning

---

amended, has precluded awards of DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C); 20 C.F.R. § 404.1535; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether his drug and alcohol abuse were material to a finding of disability.

> (e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Commissioner*, 572 F.3d at 276. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511. The ALJ gave this subjective measurement appropriate weight.

   3. <u>Physician's Assistant Handlin and Social Worker Padding</u>

Plaintiff argues that the ALJ should have given greater weight to opinions offered by Physician's Assistant Patrick Handlin and Social Worker William Padding. This argument is meritless. The opinions of a physician's assistant and a social worker are not entitled to any particular weight. They are not "acceptable medical sources." *See* 20 C.F.R. § 404.1513(a), (d). Their opinions are not treating-source opinions. *See* 20 C.F.R. § 404.1502 ("*Treating source* means your own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."); *see also Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007). Their opinions are not entitled to deference under the treating physician rule, which does not apply to the opinions of social workers and physician's assistants. *See Geiner v. Astrue*, 298 F. App'x 105, 108

(2d Cir. 2008); *Eldridge v. Apfel*, No. 98-5427, 1999 WL 196564, at * 2 (6th Cir. Mar. 30, 1999) ("[A]lthough the administrative judge is required to consider evidence presented by certain 'acceptable medical sources' including psychiatrists and psychologists, a social worker is simply considered an 'other source' whose opinion the administrative law judge *may* consider."); *accord Boyett v. Apfel,* 8 F. App'x 429, 433 (6th Cir. 2001); *Ferguson v. Commissioner*, No. 95-2152, 1996 WL 341147, at * 1 (6th Cir. June 19, 1996). The ALJ did not find that the opinions offered by these individuals were particularly persuasive. (A.R. 16-17, 19-23).

Plaintiff's related argument that the ALJ violated Social Security Ruling (SSR) 06-3p (Plf. Brief at 14-17) is meritless. SSR 06-3p clarifies how the Social Security Administration "consider[s] opinions from sources who are not 'acceptable medical sources.'" *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)). SSR 06-3p begins by emphasizing the critical distinctions between opinions offered by "acceptable medical sources" and opinions supplied by "other sources." Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. 2006 WL 2329939, at * 1. The opinions of social workers and physician's assistants fall within the category of information provided by "other sources." *Id.* at * 2; *see* 20 C.F.R. § 404.1513(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1512, .1527, 416.912, .927). This is not a demanding standard, and it was easily met here. The

ALJ expressly considered the opinions offered by Handlin and Padding. (A.R. 19-23). Further, even if the ALJ had not mentioned these opinions, it would not provide a basis for disturbing the Commissioner's decision. The ALJ is not required to discuss every piece of evidence, and his failure to do so does not indicate that the evidence was not considered. "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); 2004); *accord Van Der Maas v. Commissioner*, 198 F. App'x 521, 526 (6th Cir. 2006).

SSR 06-3p does not require that an ALJ discuss opinions supplied by "other sources" or to explain the evidentiary weight assigned thereto. "[T]here is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." 2006 WL 2329939, at * 6. "While Ruling 06-3p certainly encourages ALJ's to evaluate each opinion in the record, regardless of its source, the ruling is not written in imperative form." *Smith v. Commissioner*, No. 4:09cv80, 2010 WL 1640271, at * 4 (E.D. Va. Apr. 22, 2010). SSR 06-3p consistently uses the permissive term "should." 2006 WL 2329939, at * 5-6. The one instance where SSR 06-3p requires an explanation by the ALJ is the rare instance where an ALJ gives greater weight to an opinion from an "other source" over the medical opinion of a treating physician:

> [W]hen an adjudicator determines that an opinion from [an "other source"] is entitled to greater weight than an opinion from a treating source, the adjudicator **must** explain the reasons in the notice of decision in hearing cases . . . if the determination is less than fully favorable.

2006 WL 2329939, at * 6 (emphasis added).

The ALJ invoked and followed the course of action recommended by SSR 06-3p:

Factors for Considering Opinion Evidence

Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity. These factors include:

• How long the source has known and how frequently the source has seen the individual;

• How consistent the opinion is with other evidence;

• The degree to which the source presents relevant evidence to support an opinion;

• How well the source explains the opinion;

• Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

• Any other factors that tend to support or refute the opinion.

2006 WL 2329939, at * 4. The ALJ carefully considered the type of counseling provided and the length and frequency of such sessions. He noted that plaintiff met with his social worker about once a month and that they discussed plaintiff's "breaking out of his shy personality." (A.R. 19-20; *see* A.R. 428-30). Physician's Assistant Handlin was treating plaintiff for emotional problems, but Dr. Miklashek wrote the prescriptions. (A.R. 19). Plaintiff met with Handlin "once a month, and talked to him about his past problems. His visits with Mr. Handlin were much shorter in duration than the visits with Mr. Padding." (A.R. 20; *see* A.R. 419, 429-30). Plaintiff testified that he thought he had benefitted from counseling. (A.R. 20; *see* A.R. 421). "He had never been hospitalized for mental problems. He had not been on psychotropic medications until July 2006, the same time he started seeing Mr. Handlin." (A.R. 20; *see* A.R. 23, 421-23). The ALJ recognized that Mr. Padding was a licensed social worker and summarized the GAF scores and questionnaire responses that Mr.

Padding submitted in support of plaintiff's claim for DIB benefits. (A.R. 20-21; *see* A.R. 239-40, 274-75, 322-37). Substantial restrictions could not be justified where plaintiff had never required psychiatric hospitalizations, never made a suicide attempt, required counseling only once a month, and his medications had provided good relief and emotional stability. (A.R. 22). The ALJ found that the opinions Mr. Handlin supplied in a July 3, 2007 letter (A.R. 338) were entitled to little weight. By contrast, the opinions expressed by Dr. Burrill, a licensed psychologist and an "acceptable medical source,"[4] were entitled to great weight:

> On February 12, 2007, Katherine A. Burrill, Ph.D. conducted a consultative psychological evaluation of the claimant who stated that he had mood swings for several years. He had low self-esteem, and felt hopeless, helpless, and worthless. He complained of angina and fatigue. He had suicidal ideation. He related a history of three DUIL convictions in the 1980's and 1990's. The doctor interviewed the claimant and diagnosed him with major depression, severe, recurrent, and alcohol dependence, with a GAF score of 50. The doctor also prepared an assessment of the claimant's ability to do work-related activities (mental) indicating generally good to fair emotional abilities in those areas evaluated (Exhibit 13F)[A.R. 284-90].
>
> * * *
>
> Also given great weight are the opinions of Dr. Burrill, who evaluated the claimant from a psychological standpoint. She was of the opinion that the claimant was limited to doing unskilled work, and the undersigned agrees that the claimant's record supports that conclusion, and therefore finds that the claimant is limited to doing a restricted range of light, unskilled work.
>
> [] Mr. Handlin wrote a letter on July 3, 2007, supporting the claimant's application for Disability Insurance Benefits, and stating that the claimant was seen by him for psychiatric monitoring and medication management. However, it is important to note that Mr. Handlin is not a psychiatrist or a psychologist, but rather a physician's assistant. Accordingly, his ability to provide psychiatric counseling or treatment is limited, and he certainly cannot provide medication for the claimant. Mr. Handlin also does not specifically indicate in that letter that he finds the claimant to be disabled on a mental or emotional basis, and his prior

---

[4] Licensed psychologists are "acceptable medical sources." 2006 WL 2329939, at * 1 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).

notes do not support that conclusion. For all of those reasons, the recommendation of Mr. Handlin for disability benefits is given greatly reduced weight.

(A.R. 21, 23). SSR 06-3p expressly recognizes that it is appropriate for the ALJ to give greater weight to the opinion of an acceptable medical source based on her superior qualifications. 2006 WL 2329939, at * 5 ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, 'acceptable medical sources' 'are the most qualified health care professionals.'"); *see Paulson v. Astrue*, No. 08-36049, 2010 WL 675573, at * 2 (9th Cir. Feb. 26, 2010). I find no error.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: August 2, 2010      /s/ Joseph G. Scoville
                           United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).